**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Mary Kathleen Benore, | : | Case No. 3: 08-CV-01738 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Appeal Council's decision to deny her request for review (Tr. 3-5). Pending are Plaintiff's Briefs on the Merits and Amended Brief (Docket Nos. 15, 22 & 23) and Defendant's Brief on the Merits (Docket No. 16). For the reasons set forth below, the Commissioner's decision is affirmed.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was entitled to Medicare benefits beginning in September 1992 (Tr. 161-162). On October 22, 1992, Plaintiff filed an application for retirement insurance benefits (Tr. 15-17). She was awarded benefits commencing on November 12, 1992[1] (Tr. 18-19).

---

[1] The monthly retirement benefits included an initial payment of $183.60. After the first check, Plaintiff received $60 monthly. In addition, she was entitled to hospital and medical insurance under Medicare.

In December 2002, Plaintiff was notified that she was entitled to monthly "wife's benefits" beginning in May 2002[2] (Tr. 20-21). On February 3, 2003, Plaintiff was advised of a new repayment withholding schedule used to collect an overpayment[3] (Tr. 27-30). Defendant acknowledged Plaintiff's request for forbearance and informed her on February 21, 2003, that she would continue to receive benefits[4] (Tr. 31-34). On March 12, 2003, Plaintiff's request for forbearance was again acknowledged[5] (Tr. 35-38). Plaintiff was interviewed by Social Security Administration (SSA) personnel on April 14, 2003, pursuant to her request for a waiver of payment[6] (Tr. 50). A report prepared on May 14, 2003, showed a computation of the overpayment[7] (Tr. 52). The SSA denied Plaintiff's request for waiver of the collection of overpayment on June 3, 2003[8] (Tr. 54-56).

The Assistant Regional Commissioner calculated that Plaintiff received $12,170 more in Social Security benefits than she was due on July 14, 2003 (Tr. 59-60). Plaintiff was awarded monthly widow's

---

[2] Plaintiff's benefit as a wife was $85. This was in addition to the benefit of $60 on Plaintiff's own earnings record.

[3] The amount Plaintiff owed as of February 3, 2003, was $12,074.30. Plaintiff was scheduled to receive $3 for January and February 2008.

[4] Plaintiff was awarded $146 for February and March 2003.

[5] Plaintiff was awarded $146 for March 2003 and April 2003.

[6] The interviewer determined that Plaintiff filed for benefits while undergoing divorce proceedings from her second husband. When her divorce was final, she did not report this event. She filed for benefits on her first husband's records. She did not file the proper application for spousal benefits from her first husband's records.

[7] Once the amounts due were offset by the amounts paid, the total overpayment equaled $12,279.

[8] SSA did not find Plaintiff without fault in causing the overpayment. Plaintiff failed to report that she was divorced. Further, Plaintiff knew or should have known that she was filing for benefits on her second husband's record because this name was listed on the application as the worker.

benefits beginning in August 2003[9] (Tr. 169). Pending her request for a hearing, Plaintiff's benefits were continued for October and November 2003 (Tr. 172, 174). On November 12, 2003, Plaintiff proffered payment on her calculation of the overpayment amount[10] (Tr. 176).

On or about August 1, 2003, Plaintiff requested a hearing by an Administrative Law Judge (ALJ) (Tr. 67). A hearing was held on August 5, 2004, before ALJ Richard C. Ver Wiebe (Tr. 114-119). The ALJ rendered an unfavorable decision on May 6, 2005[11]. The Appeals Council remanded the case to the ALJ on October 19, 2005[12] (Tr. 125-127).

In April 2006, Plaintiff provided the ALJ with a detailed analysis of extraordinary expenses incurred on her car, home and septic system (Tr. 179-186). The ALJ acknowledged the order of remand and provided a representative referral list on July 26, 2006 (Tr. 133-136).

An administrative hearing was conducted on December 5, 2006, before ALJ John S. Pope. Plaintiff, *pro se*, appeared and testified (Tr. 202). ALJ Pope rendered an adverse decision on September 27, 2007 (Tr. 12-14). The Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 3-5). Plaintiff filed a timed request for judicial

---

[9] The monthly benefit was $1,112 in addition to the benefit of $77 based on Plaintiff's own earnings record.

[10] Plaintiff repaid $1235 (Tr. 176).

[11] The ALJ determined that Plaintiff was not married to her second husband for ten years before her divorce was final; consequently, she was not entitled to a divorced spouse's benefits. Plaintiff should have known that she was drawing benefits from her second husband's earning account. Accordingly, she was "not without fault" for creating the overpayment. Plaintiff had sufficient assets and income to repay the overpayment and still have enough for basic necessities of life (Tr. 125).

[12] The Appeals Council noted that the ALJ did not retrieve, for purposes of the proceeding, the claim file housing the application of Plaintiff's insurance benefits which would have been filed by Plaintiff on the record of her second husband. Moreover, the ALJ issued an on the record decision as there was not documentation to show that Plaintiff waived her right to an oral hearing. The Appeals Council also suggested that the ALJ refer Plaintiff's clam that she received misinformation from SSA to the appropriate component of the SSA (Tr. 125-126).

review in this Court.

## II. JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).

## III. THE HEARING

Plaintiff's work history which included jobs as a substitute teacher with the Board of Education and administrative secretary to the Director of the Bureau of Worker Compensation. In 1987, Plaintiff was employed with the City of Toledo buying and selling abandoned properties. This led to employment as a real estate specialist (Tr. 219, 222).

Plaintiff testified that she was married to Ralph Heumann in 1987. When making application for benefits, she told the SSA staff person that a divorce from Mr. Heumann was imminent. Therefore, Plaintiff requested that she file for benefits based on her first husband's record (Tr. 207, 220, 226). The staff person explained the pension offset and also told Plaintiff that she could file on either husband's account (Tr. 207, 217). Plaintiff chose to file on her first husband account (Tr. 207, 218). The staff person typed information on the form. Plaintiff signed and returned it (Tr. 218, 220). She noted that the application did not show which husband's records were the source of her award (Tr. 207). She became aware that she was collecting on Mr. Heumann's account when SSA requested a pension statement (Tr. 224).

Plaintiff admitted that she had "some" money; however, she was convinced by the ages of her father and siblings, that she would live a long time. She expressed concern about the sufficiency of funds throughout her life, particularly since she was unable to continue working (Tr. 212).

Plaintiff's adjusted gross income for the preceding year was $23,000 (Tr. 213). From that income, Plaintiff was responsible for real estate taxes totaling $3600 annually, utilities and maintenance on her home (Tr. 215). Her car's odometer read 168,000 miles (Tr. 228). Plaintiff suggested that, at most, she should be required to repay only the increase in the monthly amount received as a result of using the second husband's account. In this case, Plaintiff believed that amount to be $40 per month (Tr. 227-228).

## IV. ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings;

1.  Plaintiff was overpaid Title II Spouse's Insurance Benefits in the amount of $12,170 for the period from March 1993 through November 2002.

2.  Plaintiff was not at fault in causing the overpayment.

3.  Plaintiff's allegations and testimony were found to be generally credible.

4.  Recovery of the overpayment would not defeat the purpose of the Act nor would it be against equity and good conscience.

5.  Recovery of the overpayment was not waived. (Tr. 14).

## V. STANDARD OF REVIEW

Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security,* 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The decision must be affirmed if the ALJ's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.

" 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept. ' " *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001) (*citing Kirk v.*

5

*Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983) (*quoting Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id.* (*citing Key, supra*, 109 F.3d at 273).

## VI. STANDARDS FOR RECOVERY OF OVERPAYMENTS

**A.   20 C. F. R. § 404.502.  OVERPAYMENTS.**

Upon determination that an overpayment has been made, adjustments will be made against monthly benefits and lump sums of a living individual as follows:

If the individual to whom an overpayment was made is at the time of a determination of such overpayment entitled to a monthly benefit or a lump sum under Title II of the Act, or at any time thereafter becomes so entitled, no benefit for any month and no lump sum is payable to such individual, except as provided in paragraphs ©) and (d) of this section, until an amount equal to the amount of the overpayment has been withheld or refunded. Such adjustments will be made against any monthly benefit or lump sum under Title II of the Act to which such individual is entitled whether payable on the basis of such individual's earnings or the earnings of another individual.

**B.   20 C. F. R. § 404.506.  WHEN WAIVER MAY BE APPLIED AND HOW TO PROCESS THE REQUEST.**

(a) Section 204(b) of the Act provides that there shall be no adjustment or recovery in any case where an overpayment under Title II has been made to an individual who is **without fault** if adjustment or recovery would either **defeat the purpose of Title II of the Act**, or **be against equity and good conscience**.

**C.   20 C. F. R. § 404.507.  (WITHOUT) FAULT DEFINED.**

Fault as used in "without fault" in Section 404.506, applies only to the individual. Although the SSA may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the SSA seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the SSA will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault (except for deduction overpayments--see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the SSA seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a

provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:

  (a)  An incorrect statement made by the individual which he knew or should have known to be incorrect; or

  (b)  Failure to furnish information which she knew or should have known to be material; or

  (c)  With respect to the overpaid individual only, acceptance of a payment which he/she either knew or could have been expected to know was incorrect.

### D. 20 C. F. R. § 404.508.  DEFEAT THE PURPOSE OF TITLE II, DEFINED.

 (a)  Defeat the purpose of Title II, for purposes of this subpart, means defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his/her current benefits for such needs. An individual's ordinary and necessary expenses include:

  (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under Title XVIII), taxes, installment payments, etc.;

  (2) Medical, hospitalization, and other similar expenses;

  (3) Expenses for the support of others for whom the individual is legally responsible; and

  (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

 (b)  When adjustment or recovery will defeat the purpose of Title II. Adjustment or recovery will defeat the purposes of Title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his/her current income (including social security monthly benefits) to meet current ordinary and necessary living expenses.

### E. 20 C. F. R. § 404.509.  AGAINST EQUITY AND GOOD CONSCIENCE; DEFINED.

 (a)  Recovery of an overpayment is against equity and good conscience (under Title II and Title XVIII) if an individual–

  (1) Changed his or her position for the worse (Example 1) or relinquished a valuable right (Example 2) because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

  (2) Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment (Examples 3 and 4).

 (b) The individual's financial circumstances are not material to a finding of against equity and good conscience.

## **VII.  DISCUSSION**

Plaintiff stressed that since the ALJ found that the overpayments were not her fault, the Court should find that repayment defeats the purpose of Title II and is against equity and good conscience.  The ALJ erred in failing to waive the overpayment.  In the alternative, Plaintiff suggests that she has already repaid the purported overpayment.

Defendant contends that Plaintiff is not eligible for relief under 20 C.F.R. § 404.510a because she has not shown that she relied on erroneous information from an official source within SSA in the interpretation of a pertinent provision of the Act or regulations pertaining thereto.  Defendant argues that it is clearly not against equity or good conscience to collect the overpayment from Plaintiff.

The ALJ was confronted with determining whether the government could waive repayment considering his finding that Plaintiff was without fault in causing the erroneous overpayment.  The ALJ then determined that an adjustment or recovery would not defeat the purposes of the Act nor would it be against equity and good conscience.  The Magistrate finds that this decision is supported by substantial evidence and will not be disturbed.

The statues clearly state that a recipient who is without fault may be compelled to return the overpaid amount if it is determined that no hardship or inequity will result.  In this case, Plaintiff did not present evidence that repayment would alter her circumstances.  In fact, the uncontroverted evidence reveals that recovery in this case would not impose an economic burden on Plaintiff.  Although Plaintiff's monthly income in 2005 was approximately $1916, from which she paid real estate taxes of $300, Medicare premiums and utilities, she had assets totaling approximately $240,000.  She conceded that she should repay the difference in the amount she received versus the amount that she should have received.  The ALJ's decision to refuse a waiver of recovery of the overpayment of funds under these circumstances is

8

not contrary to the purpose of Act nor does it offend equity and good conscience.

## VIII. CONCLUSION

Since the ALJ's decision is based on substantial evidence, the Commissioner's decision must be affirmed and the case dismissed.

**IT IS SO ORDERED.**

>                          /s/ Vernelis K. Armstrong
>                          United States Magistrate Judge

Date:   August 12, 2009